IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| United States of America, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 20-03-LPS |
| Nylere Stanford, | : |
| Defendant. | : |

David C. Weiss, Michael F. McTaggart, U.S. ATTORNEY'S OFFICE, DISTRICT OF DELAWARE, Wilmington, DE

    Attorneys for United States of America

Edson A. Bostic, David L. Pugh, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wilmington, DE

    Attorneys for Defendant

**MEMORANDUM OPINION**

November 13, 2020
Wilmington, Delaware

STARK, U.S. District Judge:

Defendant Nylere Stanford is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). (D.I. 1) Pending before the Court is Defendant's motion to suppress physical evidence seized from 615 S. Buttonwood Street, Wilmington, DE 19801 pursuant to a Delaware search warrant. (D.I. 19-20) Having considered the parties' filings and related materials (*see, e.g.*, D.I. 19-21, 24-27), the Court will deny Defendant's motion.

I. **Background**

According to law enforcement, a group of four or five people (made up of one female and a group of males) robbed a convenience store in Winston-Salem, North Carolina on or about September 18, 2019. (*See* D.I. 19 at ¶ 1) It is alleged that one male was armed with a silver semi-automatic pistol, while another of the males was armed with a black semi-automatic rifle. (*Id.*)

On October 8, 2019, the Sheriff's Office of Forsyth County, North Carolina obtained warrants to arrest certain individuals alleged to be connected to the robbery; this included Defendant. (*See* D.I. 19 at ¶ 2 and Ex. 1; D.I. 24 Ex. 1 (hereinafter "Arrest Warrant" or "AW")) The Arrest Warrant stated there was probable cause to believe the individuals (including Defendant) stole $3,000 from the convenience store while in possession of a "SILVER SEMI-AUTOMATIC PISTOL WITH LASER/LIGHT ATTACHMNET AND BLACK SEMI-AUTOMATIC RIFLE." (AW at *1) While the Arrest Warrant does not explain how Defendant was identified, other evidence in the Court's record makes it appear that one allegedly involved individual, Daniel Potts, was identified by an eyewitness, while Defendant and his girlfriend, Khadija Potts, were allegedly identified by Detective Faircloth, a Forsyth County Deputy who did not personally witness the incident but compared security camera footage from the store with

1

photos.[1]  (D.I. 19 at ¶ 2)

Also on October 8, 2019, Detective Faircloth made contact with Detective Justin Cannon of the Wilmington Police Department (who is also assigned to the U.S. Marshal's Service First State Task Force), informing him that North Carolina law enforcement believed Defendant was in Wilmington and requesting assistance in apprehending Defendant pursuant to the Arrest Warrant.  (*Id.* at ¶ 3)

On October 15, 2019, Daniel Potts and Khadija Potts were arrested.  (D.I. 19 at ¶ 4) Daniel Potts was eventually released on bond, while Khadija Potts was released that same day with all charges dismissed.  (*Id.*)  Defendant contends that "[o]n information and belief, it had been determined that Detective Faircloth had mis-identified [Khadija Potts] from the grainy black and white video."  (*Id.*)

On October 23, 2019, Detective Cannon applied for, and received, a search warrant, authorizing the use of a Cell Site Simulator to obtain the location of a phone believed to be possessed by Defendant.  (D.I. 20 Ex. 3 (hereinafter "Phone Warrant" or "PW"); *see also* D.I. 19 at ¶ 5)  The Phone Warrant indicates the Defendant's previous employer provided the phone

---

[1] Defendant contends the black and white security footage from the convenience store was grainy and that "[u]pon information and belief, there is no other evidence connecting Mr. Stanford to the alleged robbery, [as] [t]here was no corroboration by DNA, fingerprints, or eyewitnesses tying Mr. Stanford to the alleged robbery."  (D.I. 19 at ¶ 2; *see also* D.I. 20 at 2) Defendant also notes that law enforcement "created an 'Attempt to Identify' poster from video capturing the robbery.  However, that similarly led nowhere.  The low-quality video was in black and white and was grainy."  (D.I. 20 at 2)  Whether this or other evidence would be sufficient to convict Defendant of a criminal charge relating to the robbery is not an issue before the Court.  A motion to suppress is not an occasion to evaluate the sufficiency of the government's evidence of guilt.  *See generally United States v. Gillette*, 738 F.3d 63, 74 (3d Cir. 2013) ("[A] district court is prohibited from examining the sufficiency of the government's evidence in a pretrial motion to dismiss because the government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29.") (internal quotation marks omitted).  Moreover, Defendant is not charged here with the North Carolina robbery, he is charged with unlawfully possessing a firearm.

2

number to North Carolina law enforcement and that the number was also associated with a prior incident alleged to have involved Defendant. (PW at *65-66, ¶ 9) Detective Cannon stated that probable cause for the Phone Warrant was based on a prior search warrant directed to Sprint around October 16, 2019, which established that Defendant's phone was moving about in an area of Wilmington known to be a "high drug and crime area," in which "general surveillance methods are not conducive," and also that the targeted phone was making and receiving calls with phone numbers connected to Defendant's family members and associates. (*Id.* at *66-67, ¶¶ 16-17) Furthermore, the Phone Warrant states: "it is known that [Defendant] is originally from the Wilmington, Delaware area and has numerous family members as well as associates that can assist him [] while on the run from North Carolina." (*Id.* at *67, ¶ 18) As a result of the Phone Warrant, police developed information that Defendant was staying at 615 S. Buttonwood Street in Wilmington, Delaware. (D.I. 19 at ¶ 6) This address is the home of Defendant's brother. (D.I. 20 at 3)

On the morning of October 24, 2019, the Wilmington Police Department and the U.S. Marshals established a perimeter at 615 S. Buttonwood Street, Wilmington, Delaware. (D.I. 19 at ¶ 7) Law enforcement indicates that the only person seen leaving or entering the property was an individual named Takeesha Gardner, at around 9:15 a.m. (D.I. 24 at 2) When Ms. Gardner was asked, she informed law enforcement that Defendant and his brother, Naki Gibson (who was also wanted by police, on different charges), were in the residence. (D.I. 19 at ¶ 17; D.I. 24 at 2-3) Law enforcement subsequently knocked on the front door of 615 S. Buttonwood Street at about 9:31 a.m., announced "POLICE," and then entered the unlocked residence. (*See* D.I. 19 at ¶ 17; D.I. 24 at 3)

According to the government, upon finding Defendant laying on the couch in the first

3

floor living area, officers gave numerous commands for Defendant to get up with his hands in the air. (D.I. 24 at 3) Defendant is purported to have been "moving around with his hands underneath him," but was ultimately taken into custody without incident. (*Id.*) Defendant's brother, Mr. Gibson, was also taken into custody on an unrelated traffic warrant. (D.I. 19 at ¶ 7; D.I. 24 at 3) Upon conducting a protective sweep of the residence, officers purportedly "observed a partially exposed handgun in plain view under a couch cushion in the same area where [Defendant] had previously been acting suspiciously." (D.I. 24 at 3)

After Defendant was arrested and taken to the Wilmington Police Department, Detective Cannon (who had not been at the residence during execution of the Arrest Warrant) proceeded to apply for a search warrant of 615 S. Buttonwood to retrieve evidence of the alleged robbery. (D.I. 19 Ex. 2 & D.I. 24 Ex. 2 ("Search Warrant" or "SW"); *see also* D.I. 19 at ¶ 8)[2] The Search Warrant listed the items to be searched for in three categories: (1) "[a]ny firearms, ammunition, holsters, pawn or sales receipts indicating the sale or purchase, possession or pawning of a firearm," (2) "[c]lothing – a dark colored bucket style hat, a dark colored short sleeve shirt with California and a bear on it, and dark colored sneakers," and (3) "[a]ny papers, identification, or written documents that would indicate a secondary residence." (SW at *50 & 51, ¶¶ 1-3) In the affidavit supporting the application for the Search Warrant, Detective Cannon stated that Defendant was wanted out of North Carolina pursuant to the Arrest Warrant and described the events that had occurred that morning in connection with execution of the Arrest Warrant. (*Id.* at

---

[2] The Search Warrant refers to the 615 S. Buttonwood address on at least six occasions and refers to "615 Bradford Street, Wilmington, DE 19801" once, the latter evidently being Defendant's prior address. (*See* SW at *53 ¶ 8) The Court agrees with the government that "Page 1 and 2 of the Search Warrant clearly described 615 S. Buttonwood Street, Wilmington, DE as the residence to be searched." (D.I. 24 at 3) To the extent Defendant is seeking to suppress the Search Warrant based on this typographical error, the relief requested is not warranted.

4

\*52, ¶¶ 2, 4-6)

In particular, Detective Cannon stated as follows:

> 3. During the investigation by the North Carolina authorities it was learned that [Defendant] and three other accomplices entered a convenience store and robbed it at gun point. Two of the subjects were armed, one with a rifle with a high capacity magazine and another with a black and silver handgun with laser. The Sheriff's office was able to arrest three out of the four subjects and [Defendant] is the last outstanding subject to be apprehended. They also advised that the firearms used in the robbery are believed to still be outstanding.

(*Id.* at \*52, ¶ 3)

Once the Search Warrant application was granted that morning, Officer DiRocco of the Wilmington Police Department (not Detective Cannon) led the search of 615 S. Buttonwood Street. (D.I. 24 at 4) Law enforcement seized a Taurus PT 24/7 semi-automatic pistol loaded with 10 rounds of F.C. 9mm luger ammunition, as well as a black iPhone. (SW at \*39-40)

On January 8, 2020, a federal grand jury returned a one-count indictment charging Defendant with possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). (D.I. 1) Defendant was subsequently arrested on January 16, 2020. (D.I. 10) Defendant filed his pending motion to suppress on April 29, 2020, seeking to suppress physical evidence seized from the 615 S. Buttonwood Street residence on the basis that the Search Warrant lacks probable cause. (*See* D.I. 19-20, 24-27) The motion was fully briefed as of June 1, 2020. (*See* D.I. 25)

## II. Legal Standards

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and instructs, among other things, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41(d). In *Illinois v. Gates*, 462

5

U.S. 213, 238 (1983), the Supreme Court stated that in determining whether probable cause exists, a judge need only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." In this context, "[t]he role of a reviewing court is not to decide probable cause *de novo*, but to determine whether the [judge who issued the search warrant] had a substantial basis for concluding that probable cause existed." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010); *see also United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005) ("[C]onclusions of a neutral [judge] regarding probable cause are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided.").

"To deter Fourth Amendment violations, when the Government seeks to admit evidence collected pursuant to an illegal search or seizure, the judicially created doctrine known as the exclusionary rule at times suppresses that evidence and makes it unavailable at trial." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014) (citing *Herring v. United States*, 555 U.S. 135, 139 (2009)). "The exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure,'" as well as "'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). The exclusionary rule is a judicially-created remedy "designed to deter police conduct that violates the constitutional rights of citizens." *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002); *see also Katzin*, 769 F.3d at 170 ("Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights.").

A warrant lacking probable cause is not automatically subject to the "extreme sanction of exclusion." *United States v. Leon*, 468 U.S. 897, 926 (1984). For instance, the good faith exception "instructs that suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority even though no probable cause to search exists." *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002) (internal citation omitted); *see also Leon*, 468 U.S. at 923 n.23 ("[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.").

### III. Discussion

#### A.    Defendant Has Standing to Challenge the Search Warrant

A defendant moving to suppress evidence seized in a search bears the burden of proving that he has standing, which in turn requires proof that he had a legitimate expectation of privacy. *See United States v. Donahue*, 764 F.3d 293, 298 (3d Cir. 2014) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). The standing inquiry "turns on two specific questions: '(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances.'" *Donahue*, 764 F.3d at 298 (quoting *Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 543 (3d Cir. 2012)). In *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990), the Supreme Court held that overnight guests have a legitimate expectation of privacy in a host's home.

Defendant has adequately demonstrated he has standing to challenge the Search Warrant. (*See* D.I. 20 at 5; D.I. 25 at 3) Defendant was found at his brother's residence around 9:31 a.m., lying on a couch with a sheet and pillow, strongly suggesting that he was an overnight guest with a legitimate expectation of privacy. In opposition to this common-sense conclusion, the government offers nothing beyond disagreement. (*See* D.I. 24 at 5) On this record, the Court

7

finds that Defendant has met his burden to show he has standing.

### B. The Good Faith Exception Applies

Defendant challenges the search warrant as lacking a substantial basis for finding probable cause, as required under the Fourth Amendment. (*See* D.I. 20 at 5-12) While the government responds that the affidavit supporting the Search Warrant establishes probable cause, the government urges the Court to move past the issue of probable cause and determine, instead, that the good faith exception applies. (*See, e.g.*, D.I. 24 at 6 n.2) The Court will follow the approach advocated by the government, which is a course of action expressly encouraged by the Court of Appeals. *See, e.g., United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars And Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002) ("Under *Leon*, if a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing court to turn immediately to a consideration of the officers' good faith."); *see also United States v. Mitchell*, 2008 WL 2942142, at *4-5 (D. Del. July 30, 2008).[3]

"Ordinarily, the mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith, and will obviate the need for any deep inquiry into reasonableness." *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (internal quotation marks omitted). The good faith exception does not apply, however, when: (1) the judge issued

---

[3] The government also argues, in the alternative, that the motion can be denied based on the plain view doctrine, contending that officers executing the Search Warrant would testify at a hearing that they saw "a partially exposed handgun in plain view under a couch cushion in the same area where the defendant had previously been acting suspiciously." (*See* D.I. 24 at 3; *see also id.* at 11-13; D.I. 25 at 7-8) The Court need not reach this issue because it is denying the motion on the basis of the good faith exception to the warrant requirement.

the warrant in reliance of a deliberately or recklessly false affidavit; (2) the judge abandoned her judicial role and failed to perform her neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and, (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *See United States v. Am. Inv. of Pittsburgh, Inc.*, 879 F.2d 1087, 1106-07 (3d Cir. 1989). Defendant contends that exceptions (1) and (3) apply here. The Court disagrees.

Defendant contends the Search Warrant was based on false and misleading information in Detective Cannon's affidavit, specifically: (1) incorrectly stating that three out of four of the robbery suspects had been arrested; (2) incorrectly stating that Defendant was the last subject to be arrested; (3) incorrectly describing the firearm as "black and silver" instead of "silver;" and, (4) failing to state that Defendant's girlfriend, Khadijah Potts, had been arrested but then immediately released on October 15, 2019. (*See* D.I. 20 at 9-12; D.I. 24 at 8-9; *see also* SW at *52-53) Even assuming these statements were incorrect (and the government does not seem to dispute that point, at least with respect to some of the statements),[4] to succeed on his motion Defendant must show that they were (i) made knowingly and deliberately, or with a reckless disregard for the truth, and (ii) that the statements were material, or necessary, to the probable cause determination. *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006). Defendant has failed to do so.

The alleged inaccuracies in Detective Cannon's affidavit were not material. (*See* D.I. 24 at 9) (providing exemplary version of affidavit's paragraph 3 marked to show changes Defendant

---

[4] The government has also acknowledged that it made an error in its answering brief (*see* D.I. 26), but the Court does not find this error to be material to the resolution of the motion.

9

would implicitly have preferred) Defendant has offered nothing more than conclusory statements on materiality. (*See* D.I. 20 at 10; D.I. 24 at 6-7) The status of the arrests of those alleged to be involved in the North Carolina robbery and details about the color of the handgun Defendant might have used and still possessed would not have reasonably influenced a neutral judicial officer in deciding whether there was or was not probable cause to believe that evidence of a crime would be found in the premises to be searched. The Court is not persuaded that the alleged false and misleading statement in the affidavit suffice as an exception to the good faith doctrine.

Defendant also contends the Search Warrant failed to set forth facts sufficient to establish a substantial basis for finding probable cause, pointing particularly to a purportedly insufficient nexus between the North Carolina robbery and 615 S. Buttonwood Street. (D.I. 20 at 5-9) Again, the Court disagrees. The Search Warrant expressly states that "North Carolina authorities have developed information that [Defendant] fled North Carolina to Delaware to stay with family" and that Takeesha Gardner "advised" law enforcement on the morning of October 24, 2019 that Defendant was located in the residence. (SW at *52, ¶¶ 4-5) It was objectively reasonable for the officers executing the Search Warrant to have relied on these representations and to have believed that the issuing court had a legal basis to authorize a search warrant on 615 S. Buttonwood Street for firearms and other items related to the alleged North Carolina offense. *See Leon*, 468 U.S. at 923 n.23. The Court is simply not persuaded that such reliance would have been "entirely unreasonable." *Stearn*, 597 F.3d at 561.

Defendant contends that "fatal to the constitutionality of the search warrant" is that the affidavit "lacks any reference as to when the alleged robbery took place in North Carolina (September 18, 20[19]). As a result, the reviewing magistrate judge did not know that the crime

was alleged to have taken place 36 days prior to the request for the search warrant." (D.I. 20 at 7) While this is a valid criticism of the affidavit (more detail would have been preferred), it is far from a fatality. As the government wisely observes, the affidavit discloses that the Arrest Warrant was issued on October 8, 2019, providing a reasonable basis from which to infer that the robbery had occurred not long before that date. (D.I. 24 at 7-8) Thus, when the Search Warrant was granted on October 23, 2019, the magistrate could reasonably have inferred "that the defendant committed a robbery in the recent past and therefore was still likely to possess evidence of this crime." (*Id.* at 8)

Consequently, even assuming (without deciding) that the Search Warrant was infirm, Defendant's motion to suppress fails under the good faith doctrine. Therefore, the physical evidence seized pursuant to the Search Warrant will not be suppress under the exclusionary rule.

### C. *Franks* Hearing Is Unnecessary

Defendant has requested an evidentiary hearing to further develop the facts relevant to his motion to suppress. (D.I. 20 at 14; D.I. 27 at 2) Because an affidavit supporting a search warrant is presumed to be valid, a defendant seeking a *Franks* hearing to challenge a warrant's constitutionality "must make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Yusuf*, 461 F.3d at 383 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Defendant has not met his burden here. As already noted, the Court does not believe the apparent inaccuracies in Detective Cannon's affidavit supporting the Search Warrant are material. As such, an evidentiary hearing is not warranted. (*See also generally* D.I. 24 at 2) ("As the Court may determine from the four corners of the affidavit, it was entirely reasonable for an officer to believe that the Defendant may have evidence of his crime stored at the Residence.")

11

## IV. Conclusion

An appropriate Order follows.