IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NYLERE STANFORD,<br><br>Defendant. | Crim. No. 20-3-LPS |

## MEMORANDUM ORDER

WHEREAS, Defendant Nylere Stanford pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (*see generally* D.I. 44);

WHEREAS, on December 13, 2021, U.S. Probation and Pretrial Services filed a final presentence investigation report (D.I. 56) ("PSR");

WHEREAS, Stanford and the government submitted initial briefing on Stanford's objections to the PSR (*see generally* D.I. 57, 58, 60);

WHEREAS, on December 21, 2021, the Court conducted an evidentiary hearing and heard oral argument on Stanford's objections (*see generally* D.I. 66) ("Tr.");

WHEREAS, at the conclusion of the hearing, the Court and the parties agreed that the Court would receive supplemental briefing (*see id.* at 76-79);

WHEREAS, the Court has carefully considered all the briefing (*see generally* D.I. 57, 58, 60, 67, 70, 71, 74), as well as the evidence presented at the December 21 hearing and all the arguments presented by the parties;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, for the reasons given below,

1

Stanford's objections to the PSR are **OVERRULED**.  The sentencing guidelines applicable to Stanford, and from which the Court will begin its analysis in determining an appropriate sentence, are as follows: offense level of 21, criminal history category of III, and advisory guideline range of 46-57 months.

        1.    "The defense contends that the defendant's Robbery First Degree, Robbery Second Degree, and Attempted Robbery adult convictions . . . do not meet the definition of a 'crime of violence' under" the U.S. Sentencing Guidelines ("U.S.S.G.").  (D.I. 58 at 2) Resolution of Stanford's objections to the PSR requires consideration of Delaware's statutory provisions governing the crimes of theft, second-degree robbery, and first-degree robbery.  The relevant version of the Delaware theft statute provides that "[a] person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it."  11 Del. C. § 841(a) (2008).[1]  This definition of theft is incorporated in Delaware's second-degree robbery statute:

> (a) A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with intent to:
>
> (1) Prevent or overcome resistance to the taking of property or to the retention thereof immediately after the taking; or
>
> (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

*Id.* § 831 (2008).  In turn, Delaware's first-degree robbery statute starts with second-degree

---

[1] The relevant versions of the statutes are those that were in effect in August 2008, when Stanford was convicted of the offenses that affect his base offense level and criminal history category in the PSR.  (*See* D.I. 56 at 10)

robbery and includes additional elements:

> (a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime:
>
> > (1) Causes physical injury to any person who is not a participant in the crime; or
> >
> > (2) Displays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon; or
> >
> > (3) Is armed with and uses or threatens the use of a dangerous instrument; or
> >
> > (4) Commits said crime against a person who is 62 years of age or older.

*Id.* § 832 (2008).

Stanford argues that, under Delaware law, first-degree and second-degree robbery do not require intentional conduct. In his view (*see, e.g.*, D.I. 67 at 1-3), Delaware's robbery statutes prohibit some reckless or negligent conduct, so Delaware robbery cannot qualify as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A). *See generally Borden v. United States*, 141 S. Ct. 1817 (2021) (holding that criminal offense requiring only reckless mental state does not qualify as "violent felony" under 18 U.S.C. § 934(e)). The Court does not agree that Delaware's robbery statutes cover reckless or negligent conduct. The theft statute (which is incorporated in the robbery statutes) requires that the defendant must have acted intentionally. *See* 11 Del. C. § 841(a) (2008) ("intending to deprive"). The second-degree robbery statute also expressly requires the defendant's intent. *See id.* § 831 (2008) ("with intent to . . . [p]revent or overcome . . . or . . . [c]ompel"). The first-degree robbery statute incorporates all of the second-degree

robbery requirements, including its intent requirement, as well as the theft requirements, including its intent requirement.  *See id.* § 832 (2008).[2]

Consistent with the Court's conclusions, the Delaware Supreme Court has explained that first-degree and second-degree robbery "require proof of the same mental state," i.e., that "the defendant acted intentionally."  *Allen v. State*, 970 A.2d 203, 211 & n.23 (Del. 2009) (en banc) (internal quotation marks omitted); *see also Zugehoer v. State*, 980 A.2d 1007, 1010 (Del. 2009) (referring to "intent" element for theft under 11 Del. C. § 841).[3]  Further confirmation of this point is found in the Delaware Superior Court's model jury instructions, which explicitly state that robbery requires the defendant to have acted intentionally.  (D.I. 58-1 Ex. B)  Thus, the Court rejects Stanford's argument under *Borden* that the Delaware robbery statutes are overbroad.

---

[2] Contrary to Stanford's contention, a more general statute in the Delaware criminal code – which provides a default mental-state requirement (including recklessness) when no mental-state requirement is provided in the statute of conviction itself – does not apply here.  *See* 11 Del. C. § 251.  Rather, 11 Del. C. § 252 appears to apply and fully supports the Court's interpretation: "When a statute defining an offense prescribes the state of mind that is sufficient for the commission of the offense, without distinguishing among the elements thereof, the provision shall apply to all the elements of the offense, unless a contrary legislative purpose plainly appears."

[3] Stanford's reliance on *Hackett v. State*, 569 A.2d 79 (Del. 1990), is misplaced.  In that case, the Delaware Supreme Court suggested that first-degree robbery does not require that physical injury be inflicted intentionally.  *See id.* at 80.  That discussion was in the context of a double-jeopardy analysis, and it does not imply that the overall crime of first-degree robbery may be committed recklessly.  *See id.*  Moreover, that discussion was merely dicta because the court had already explained a more fundamental difference between robbery and assault that was sufficient to reject the double-jeopardy challenge: robbery has an element of theft, while assault does not.  *See id.*  Later, in an unpublished table decision, the Delaware Supreme Court repeated the reasoning from *Hackett* to reject a similar double-jeopardy challenge.  *See Fedorkowicz v. State*, 988 A.2d 937 (Del. 2010).  For similar reasons, Stanford's reliance on *Fedorkowicz* is unpersuasive.

2.  Stanford next argues that Delaware's first-degree robbery statute is indivisible. (*See* D.I. 67 at 3 & n.4)  Again, the Court disagrees.  A statute is divisible if it "comprises multiple, alternative versions of the crime."  *Descamps v. United States*, 570 U.S. 254, 262 (2013); *see also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (explaining that divisible statutes "list elements in the alternative, and thereby define multiple crimes").  Delaware's first-degree robbery statute sets forth four alternative versions of the crime.  One of those alternatives requires the display of something that appears to be a deadly weapon.  *See* 11 Del. C. § 832 (2008); *see also Word v. State*, 801 A.2d 927, 930 (Del. 2002) (referring to disjunctive options in § 832 as "additional statutory element[s]").  Although the Court has not been pointed to any Third Circuit case addressing the divisibility of Delaware's robbery statute, the Third Circuit has undertaken this analysis with respect to Pennsylvania's robbery statute.  Like Delaware's statute, Pennsylvania's statute has alternative elements that are clearly laid out, and the Third Circuit concluded the Pennsylvania statute is "obviously divisible."  *United States v. Peppers*, 899 F.3d 211, 232 (3d Cir. 2018); *see also United States v. McCants*, 952 F.3d 416, 425-27 (3d Cir. 2020).  On the same reasoning espoused by the Third Circuit in *Peppers* and *McCants,* the Court concludes that Delaware's first-degree robbery statute is divisible.

3.  Stanford then argues that, even if Delaware's first-degree robbery statute is divisible, there is no way to know which statutory provision he was convicted of violating.  (*See* D.I. 67 at 3-5)  Based on the documents the Court is permitted to consider, however, the record is clear that Stanford was convicted of first-degree robbery with a deadly weapon under 11 Del. C. § 832(a)(2).  When a statute is divisible, courts employ a "modified categorical approach" to determine whether a predicate offense qualifies as a "crime of violence."  *Descamps*, 570 U.S.

at 261.  The modified categorical approach permits the Court to review certain documents, including the indictment and plea agreement, to understand which version of a crime the defendant was convicted of violating.  *See id.*; *see also Shepard v. United States*, 544 U.S. 13, 20-21 (2005) (permitting review of plea agreements).  Here, Count II of the indictment alleges that Stanford "displayed what appeared to be a shotgun, a deadly weapon," which closely tracks the language of § 832(a)(2).  (D.I. 58-1 Ex. A at #360)  The plea agreement further shows that Stanford pled guilty to that charge.  (*Id.* at #357)  Stanford attempts to cast doubt on the facts underlying the charge by pointing out that he also pled guilty to second-degree robbery and attempted second-degree robbery, which were only lesser-included offenses of Counts XIV and XVIII in the indictment.  (*See id.* at #365-67; *see also* Tr. at 38 ("So the facts that were alleged would have made him guilty of First Degree Robbery.  But what he pled to was Second Degree Robbery and Attempted Second Degree Robbery, which means the facts he pled to had to be different. . . .  So there is no way to identify what he was guilty of."))  Considering all the documents the Court is permitted to consider, the Court is persuaded by a preponderance of the evidence that Counts XIV and XVIII of the indictment were pled down to offenses not requiring a deadly weapon.  This does not imply anything about Count II, which was a conviction for first-degree robbery with a deadly weapon under § 832(a)(2).  (*See* Tr. at 60)  The disposition sheet for Stanford's case in Superior Court adds further corroboration, as it states that he was convicted of "DE11083200A2FB," which the Court understands to refer to Delaware Code, title 11, section 832, subsection (a)(2), which is a Felony Class B.  (D.I. 70-2 at #594)[4]

---

[4] Under the modified categorical approach, the Court may properly consider a judicial document such as the disposition sheet.  *See Shepard*, 544 U.S. at 26 (permitting review of

4. Stanford further contends that robbery under Delaware law is not a crime of violence. (*See* D.I. 67 at 5-9) The Sentencing Guidelines define "crime of violence" to mean any of an enumerated list of offenses (including robbery), as well as any other felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Under the enumerated clause in § 4B1.2(a)(2), Delaware robbery qualifies as a crime of violence if "the statutory definition . . . substantially corresponds to the generic definition" of robbery, which is "the taking of property from another person or from the immediate presence of another person by force or by intimidation." *McCants*, 952 F.3d at 428-29 (internal quotation marks omitted). The Third Circuit has explained that "generic robbery requires no more than *de minimis* force." *United States v. Graves*, 877 F.3d 494, 503 (3d Cir. 2017). Here, the Delaware robbery statutes "substantially correspond" to generic robbery. Delaware's second-degree robbery statute requires that the defendant "use[] or threaten[] the immediate use of force upon another person" while committing theft. 11 Del. C. § 831(a) (2008). This requirement of more than *de minimis* force is incorporated into the first-degree robbery statute. *See id.* § 832 (2008). Because first-degree and second-degree robbery in Delaware are not broader than generic robbery, they qualify as crimes of violence under the

---

"comparable judicial record[s]"); *United States v. Henderson*, 841 F.3d 623, 632 (3d Cir. 2016) (explaining that "reliable judicial records" include docket entries). The Court has no reason to doubt the reliability of the disposition sheet, which is a "record[] of the convicting court." *Shepard*, 544 U.S. at 23. The Court is not persuaded that the disposition sheet should be disregarded on the basis that it is too prone to errors that are likely to go unnoticed. (*See* D.I. 71 at 5-6) (citing *Mathis*, 136 S. Ct. at 2253) In *Mathis*, the U.S. Supreme Court was concerned about statements of "non-elemental fact" prejudicing defendants because "their proof is unnecessary." *See* 136 S. Ct. at 2253. Here, the statement at issue is the fact of the conviction itself, including its essential elements, which must be proven (by evidence and/or agreement) in order for a plea to be accepted. In any event, the Court would reach the same conclusion here even if the government had not introduced the disposition sheet.

enumerated clause.  *See Graves*, 877 F.3d at 504 (holding that common law robbery under North Carolina law is crime of violence).

        5. The cases cited by Stanford for his contrary conclusion do not persuade the Court. For example, Stanford relies on *State v. Smallwood*, 346 A.2d 164 (Del. 1975), for the proposition that "a conviction for first degree robbery can occur based merely on a theft and the subjective belief of the victim that the defendant was armed." (D.I. 71 at 7-8)  That argument ignores the other required elements to be convicted of first-degree robbery based on "display," including "use[] or threaten[ed] . . . immediate use of force," 11 Del. C. § 831 (2008), as well as "an objective physical manifestation that the robber appears to be displaying a deadly weapon," *Deshields v. State*, 706 A.2d 502, 507 (Del. 1998).  For these required elements to be met, it is necessary for a defendant to use more than *de minimis* force.  Stanford argues that Delaware robbery "can occur when an item is taken from a victim's grasp even if the victim is unaware of the theft while it is happening and thus offers no resistance." (D.I. 67 at 7) (citing *State v. Dawson*, 2004 WL 838858 (Del. Super. Ct. Apr. 12, 2004))  *Dawson* does not support this proposition, as the facts there involved the defendant using force to steal a purse from a 77-year-old victim.  *See* 2004 WL 838858, at *1, 4.  Relatedly, Stanford argues that a person may be found guilty of Delaware robbery "if a victim believes someone has stolen something and that person, in the course of flight, unintentionally uses force to get away." (D.I. 67 at 8) (emphasis omitted) (citing *Bialach v. State*, 744 A.2d 983 (Del. 2000))  But in *Bialach* the Delaware Supreme Court explained that a reasonable juror could have found beyond a reasonable doubt that the defendant "used force against another person **with intent** to overcome resistance to the taking of the property."  744 A.2d at 986 (emphasis added; internal quotation marks omitted).

Stanford's cases from other circuits, which hold that Massachusetts robbery and Kansas robbery are not violent felonies, are not controlling and may conflict with the Third Circuit authorities relied on by this Court.   (*See* D.I. 67 at 8 (citing *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016); *King v. MacEachern*, 665 F.3d 247, 253 (1st Cir. 2011)); *see also* D.I. 74 (citing *United States v. Bong*, 913 F.3d 1252 (10th Cir. 2019)))   Those cases involve the elements clause of the "violent felony" provision in the Armed Career Criminal Act ("ACCA"), not the enumerated clause of the "crime of violence" provision in U.S.S.G. § 4B1.2(a)(2) that is relevant here. *Parnell* and *King* also issued before the U.S. Supreme Court provided additional guidance about ACCA's elements clause and held that Florida robbery involves sufficient violence for a sentencing penalty to apply.   *See generally Stokeling v. United States*, 139 S. Ct. 544 (2019). Moreover, *Parnell* and *Bong* relied on the fact that the defendant's mere possession of a firearm, even without the victim's awareness of that fact, is enough to support a conviction of either armed robbery under Massachusetts law or aggravated robbery under Kansas law.   *See Parnell*, 818 F.3d at 980; *Bong*, 913 F.3d at 1266-67.   As explained above, however, 11 Del. C. § 832(a)(2) requires "an objective physical manifestation that the robber appears to be displaying a weapon."   *Deshields*, 706 A.2d at 507.

      6.    In sum, none of Stanford's arguments provides a meritorious basis for his objections to the base offense level and criminal history category in the presentence investigation report.   Because first-degree and second-degree robbery under Delaware law are crimes of violence within the meaning of the U.S. Sentencing Guidelines, Stanford's PSR properly

determined that Stanford has two prior such offenses.[5]

       7.    Finally, Stanford contends that the PSR improperly includes a four-level enhancement for an offense involving a firearm with "an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4).  Stanford argues that the serial number on the firearm he possessed was not altered or obliterated because it was "completely legible and required no scientific technique to restore it to that condition," so "the traceability of the firearm was not impaired."  (D.I. 57 at 14)  The Third Circuit has not addressed the proper interpretation of "altered or obliterated" in § 2K2.1(b)(4).  (*See* D.I. 58 at 9)  Stanford urges this Court to adopt the "naked eye" test, which provides that a serial number is "altered" only if it is illegible to the naked eye.  *See generally United States v. St. Hilaire*, 960 F.3d 61, 66-68 (2d Cir. 2020); *United States v. Sands*, 948 F.3d 709, 715 (6th Cir. 2020).  The Court declines to adopt the "naked eye" test, which has no apparent basis in the plain text of § 2K2.1(b)(4).  Instead, the Court relies on ordinary meaning: "a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible."  *United States v. Carter*, 421 F.3d 909, 910 (9th Cir. 2005); *see also United States v. Perez*, 585 F.3d 880, 883-85 (5th Cir. 2009) (adopting *Carter* standard); *United States v. Millender*, 791 F. App'x 782, 783 (11th Cir. 2019) (per curiam) (endorsing interpretation of "altered" to mean "changed in some way" because, in part, the more stringent "illegibility" requirement "would render 'obliterated' superfluous").  The Court agrees that this interpretation of "altered" faithfully follows the ordinary meaning of that term.  This interpretation is also consistent with the purpose of § 2K2.1(b)(4), which is to

---

[5] Given this conclusion, the Court agrees with the government that the Court need not address Stanford's prior conviction for attempted second-degree robbery.  (*See* D.I. 70 at 13 n.9)

"punish[] possession of weapons that appear more difficult to trace."  *Carter*, 421 F.3d at 915 (emphasis omitted).

        8.    Applying this standard here, the serial number on the gun that Stanford possessed is altered.  At the evidentiary hearing, an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that the serial number has scratches through all its digits, and from certain angles the scratches make it difficult to read the serial number.  (*See* Tr. at 7-8)  To obtain the serial number for an evidence label (and especially to decipher the first letter, which might be read, initially, as either a "T" or an "F"), the agent was required to "manipulate the firearm."  (*Id.* at 14)  She could not read the serial number accurately and easily from every angle.  (*Id.*)  If the serial number had not been scratched, such manipulation would not have been required.  (*Id.*)  The Court had an opportunity to view the firearm for itself, and the Court's impression is consistent with the agent's testimony.  (*See generally* D.I. 58-1 Ex. C)  Accordingly, the Court finds that the firearm involved in Stanford's offense has an altered serial number.  Although the PSR incorrectly refers to the serial number as "obliterated" (D.I. 56 at 7), the same four-level enhancement under § 2K2.1(b)(4) still applies to a firearm with an "altered" serial number.[6]

February 1, 2022  
Wilmington, Delaware

                                HONORABLE LEONARD P. STARK  
                                UNITED STATES DISTRICT JUDGE

---

[6] Even if a four-level enhancement did not apply because of the altered serial number, a two-level enhancement would still apply because the evidence shows that the firearm was stolen. *See* U.S.S.G. § 2K2.1(b)(4).  The ATF agent testified that, in 2017, the firearm was stolen during a "home invasion type of incident" in Philadelphia.  (Tr. at 9)  Stanford has not meaningfully rebutted that evidence.